UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

GO WORKOUT GRAND LEDGE LLC,

               Debtor.

_____/

Case No. DL 18-03167
Chapter 11
Hon. Scott W. Dales

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                       Chief United States Bankruptcy Judge

This matter comes before the court on the Motion of United States Trustee for Conversion of Chapter 11 Case (ECF No. 39, the "Motion"). Before the hearing on the Motion, chapter 11 debtor-in-possession Go Workout Grand Ledge LLC (the "Debtor") filed its response (ECF No. 51, the "Response"), and creditor Crestmark Equipment Finance ("Crestmark") concurred in the Response.

The parties all agree that the Motion establishes "cause" within the meaning of 11 U.S.C. § 1112(b)(4), largely because the Debtor's landlord, having obtained relief from the automatic stay, will soon evict the Debtor from the premises where it operates its gym or fitness center. Without another home, the Debtor will likely cease operations within a week. The only issue dividing the parties is whether the "best interests of creditors and the estate" require conversion to chapter 7 or dismissal. *See* 11 U.S.C. § 1112(b)(1). The United States Trustee ("UST") favors conversion; the Debtor and Crestmark favor dismissal.

The court held a hearing on October 10, 2018 in Grand Rapids, Michigan at which the Debtor's sole member, Steven Millenbach, testified, and the UST offered a single exhibit, which

the court admitted without objection.[1]  Neither Crestmark nor any other creditor participated in the hearing.  For the following reasons, the court will grant the Motion and convert, rather than dismiss, the case.

The United States District Court has jurisdiction over the Debtor's case pursuant to 28 U.S.C. § 1334(a), and pursuant to LCivR 83.2(a) (W.D. Mich.) and 28 U.S.C. § 157(a) has referred the case to the United States Bankruptcy Court.  The decision to dismiss or convert a case under 11 U.S.C. § 1112 is a matter concerning the administration of the estate and affecting the liquidation of estate assets and the adjustment of the debtor-creditor relationship.  28 U.S.C. § 157(b)(2)(A) and (O).  The contested matter raises only issues of bankruptcy law and policy. Therefore, the court has ample statutory and constitutional authority to resolve the Motion.

For its part, the Debtor advocates dismissal, suggesting through Mr. Millenbach's testimony that Mr. Darren Thayer -- the guarantor of the Debtor's obligations to Crestmark and a long-time friend to Mr. Millenbach -- is on the verge of cutting a deal with the Debtor's landlord and Crestmark for the continuation of operations on the existing premises.  According to Mr. Millenbach's testimony, if the court dismisses the case, Mr. Thayer will likely honor the existing memberships of the Debtor's customers, including those who have prepaid approximately $100,000.00 for two to three-year memberships.  Mr. Millenbach argues that a chapter 7 trustee would not be nimble enough to arrange a similar transaction, given the delay and investigations that he evidently assumed would accompany the appointment of a trustee.  According to Mr. Millenbach, dismissal is the key to using Mr. Thayer to protect the Debtors' creditors.  He argues that dismissing the case and allowing Mr. Thayer to protect the holders of prepaid memberships

---

[1] The court's posted procedures for taking testimony at a regularly scheduled motion day apprised the parties of the need to present evidence on a motion to convert under 11 U.S.C. § 1112.  *See* Judge Dales's Procedures Governing Live Testimony During Motion Day Hearings (Fed. R. Bankr. P. 9014(e)), available on the court's website at http://www.miwb.uscourts.gov/content/chief-judge-scott-w-dales.

against losses resulting from the inevitable cessation of the Debtors' business will serve the interests of unsecured creditors better than conversion.

For his part, the UST favors conversion because he contends that an independent professional trustee should evaluate the assets and consider exercising avoidance powers under chapter 5, such as preferences, fraudulent transfers or so-called "strong arm" powers to challenge transfers and liens encumbering estate assets.  The UST casts doubt on the Debtor's own evaluation of the assets by pointing, specifically, to an admitted overstatement of its accounts receivable on the July, 2018 monthly operating report (Exh. 1, the "July MOR").  In addition, after hearing about Mr. Millenbach's hopes for Mr. Thayer's supposed rescue, the attorney for the UST observed that the proposed transaction, arguably involving an insider-guarantor, counsels in favor, not against, conversion:  courts typically subject insider transactions to higher scrutiny.  Although the UST did not make the point, the Debtor's Schedule G also discloses that Mr. Millenbach may have substantial guaranty exposure to Evan Par 227, LLC, the landlord whose eviction proceedings precipitated the bankruptcy filing.

After carefully considering Mr. Millenbach's testimony and the July MOR, and mindful of Crestmark's concurrence, the court nevertheless finds that conversion, not dismissal, will better serve the interests of creditors and the estate.

The Debtor's rationale for dismissal -- that Mr. Thayer will likely assume the prepaid contracts if the court dismisses but not if the court converts -- is not persuasive, for several reasons. Although the court agrees that chapter 7 trustees, given their fiduciary duties and the requirement of court approval for transactions outside the ordinary course of business,[2] cannot act with the same alacrity as other private actors, the court nevertheless regards Mr. Millenbach's post-

---

[2] 11 U.S.C. § 363(b).

dismissal scenario as implausible. It is difficult to believe that Mr. Thayer would assume prepaid membership obligations approaching $100,000.00 to protect against honoring his $38,000.00 guaranty to Crestmark. Even indulging in the assumption that Mr. Thayer or some newly-created enterprise would assume a nearly six-figure obligation under the circumstances, the court certainly hesitates to make a decision premised on what Mr. Thayer might do without hearing directly from Mr. Thayer himself.

Mr. Millenbach's testimony about his mistaken overstatement of the accounts receivable on the July MOR also disposes the court to conversion rather than dismissal. It undermines confidence in the Debtor's schedules and disclosures more generally, suggesting a need for independent review by a panel trustee. Indeed, on Schedule A/B, filed on August 6, 2018 (ECF No. 22), the Debtor lists as an asset $98,000.00 in "Gym memberships from 1 month to 36 months," yet its deposit accounts show no sign of any balance even close to that amount. Putting aside that these prepayments should probably have been reflected as claims against the Debtor on Schedule F, and the fact that Mr. Millenbach's own testimony treated the prepaid memberships as such, the fact remains that the Debtor, or its principal, collected a substantial amount of money from the public for unearned services for which the Debtor has not accounted to the court's satisfaction. To say, as Mr. Millenbach did, that the funds were used "in operations" for a thinly capitalized business that pays its contractors an hourly rate ranging from $9.25 to $18 (ECF No. 20) is as implausible as saying that Mr. Thayer will assume the six-figure prepaid membership debt in a matter of days, premised on a new deal with the same landlord who apparently forced the enterprise into bankruptcy a few short months ago. Under the circumstances, the Debtor's creditors, hobbled in protecting themselves for several months while the Debtor enjoyed the court's protection under § 362, deserve at least some scrutiny by an independent, professional

trustee and a chance of an orderly distribution in a collective proceeding.  The court will not reward their patience by requiring them to commence individual lawsuits against the Debtor at their expense.

Similarly, the court agrees with the UST that an independent trustee should investigate the possibility of chapter 5 recoveries for the benefit of unsecured creditors.  With respect to this issue, the Debtor's Response to the Motion states, in conclusory fashion, as follows:

> As Debtor's schedules and statement of financial affairs reveal, there are no meaningful assets or causes of action, including chapter 5 causes of action, for a chapter 7 trustee to administer in this case.

*See* Response at p. 3.  These are the very schedules that identified the prepaid gym memberships as a $98,000.00 asset, a characterization which the Debtor's Response itself undercuts in the same paragraph.  *Id.* ("Debtor's gym membership contracts are more of a liability, rather than an asset, as many of Debtor's members prepaid for their memberships.").

Finally, and obviously without casting aspersions on Crestmark's collateral position, an independent trustee would likely evaluate whether the Debtor's only scheduled, secured creditor properly perfected its interest in the fitness equipment, the Debtor's main tangible asset.  In deciding between conversion or dismissal, the court naturally considers the predilection of creditors, including secured creditors.  Yet, it stands to reason that the interests of secured creditors may differ from unsecured creditors, and that the less sophisticated, less organized unsecured creditor body may benefit from a trustee's scrutiny of a secured creditor's lien.  Dismissal, as Crestmark prefers, would preclude such scrutiny.  In any event, the court assumes unsecured creditors would prefer the pro rata distribution that is available in bankruptcy court (assuming there are assets for distribution) over the "race to the court house" that generally occurs in a non-bankruptcy forum.

To summarize, based on the circumstances revealed through Mr. Millenbach's testimony and evident from a review of the schedules and the only operating report filed during the Debtor's short

tenure in bankruptcy, the court finds that cause exists to grant the UST's Motion, and that conversion, rather than dismissal, will promote the best interests of the creditors and the estate. Independent review of the supposed consumption "in operations" of nearly one hundred thousand dollars in customer deposits during the Debtor's short time in business amply justifies any inconvenience that the Debtor and Crestmark predict a chapter 7 trustee may suffer if the court converts the case.

The court will convert the Debtor's case to chapter 7 by entering a separate order for relief using its customary form.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (ECF No. 39) is GRANTED and the Clerk shall forthwith enter a separate order for relief under chapter 7 using the court's customary form.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the Debtor, Thomas John Kelly, Esq., Paul R. Hage, Esq., the United States Trustee, and all parties appearing on the Debtor's mailing matrix.

END OF ORDER

**IT IS SO ORDERED.**

**Dated October 11, 2018**



Scott W. Dales
United States Bankruptcy Judge